## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN MARIE STEVENS-NUNEZ,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-1678** |
| | : | |
| **BRISTOL BOROUGH MUNICIPAL** | : | |
| **ADMINISTRATION,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SÁNCHEZ, J.**                                                            **JUNE 3, 2024**

Plaintiff Karen Marie Stevens-Nunez has filed a *pro se* Complaint raising various claims related to her housing and mental-health treatment. (ECF No. 2.)   She names as Defendants the Bristol Borough Municipal Administration, Bristol Borough Manager James Dillon,[1] Bristol Police Chief Joseph Moors, the Bristol Police Civilian Complaint Review Board, and Borough Inspector John Miller.   She seeks leave to proceed *in forma pauperis*.   For the following reasons, the Court will grant Stevens-Nunez leave to proceed *in forma pauperis* and dismiss her Complaint in part with prejudice and in part without prejudice.

## I.   FACTUAL ALLEGATIONS[2]

Stevens-Nunez alleges that on March 23, 2023, she was "illegally padlocked out of [her]

---

[1]  The Complaint also identifies Dillon as the Borough "RTKO," which the Court understands to be a "Right-to-Know Officer."  *See* 65 Pa. Stat. and Cons. Stat. Ann. § 67.502 (West 2009).

[2]  The facts set forth in this Memorandum are taken from Stevens-Nunez's Complaint (ECF No. 2).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.  Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

apartment" by her landlord, "assisted by the Bristol Borough PD & Code Enforcement Inspector John Miller." (Compl. at 4.)  She avers she "walked home from Lower Bucks Hospital after being discharged from a 302 order . . . for attempted suicide,"[3] and found her apartment door had been padlocked. (*Id.* at 5.)  She claims she went to the Bristol Borough Police Department for assistance and spoke to non-defendant Sergeant Charles Palmer, who then contacted the landlord. (*Id.*)  Sergeant Palmer met Stevens-Nunez at the apartment an hour later and told her she had "to gather any belongings [in] roughly 20 minutes." (*Id.*)  Stevens-Nunez avers that when she entered the apartment, it "was a mess with the absorbent from [her] suicide attempt using gasoline." (*Id.*)  There was "kitty litter all over," and items were "thrown about all over the apartment" and "broken in pieces," so she could not find her wallet and other belongings. (*Id.*)  Sergeant Palmer "noticed a replica blank gun" and told Stevens-Nunez that because she had "been 302'd," she was not allowed to possess a firearm. (*Id.*)  She claims Sergeant Palmer confiscated the "blankgun [sic]" and "has yet to return [her] property nor has he given [her] a receipt for stolen possession [sic] with no warrant for removal of [her] belongings by police." (*Id.*)

Stevens-Nunez characterizes the lockout as a self-help eviction by her landlord. (*Id.*) She claims she had a Clerk of the Bucks County Magisterial District Court contact Defendant Bristol Borough Police Chief Joseph Moors to tell him that, in a landlord-tenant proceeding in state court, "Judgment for Order of Possession was not granted due to Appeal by tenant," and she

---

[3] The Court understands Stevens-Nunez's use of "302" to be referring to an order for involuntary emergency mental health examination. *See* 50 Pa. Stat. and Cons. Stat. Ann. § 7302 (West 2019).

insisted on being let back into her apartment.[4]  (*Id.*)  Instead, she claims, Chief Moors contacted Defendant Borough Inspector John Miller to conduct another inspection of the apartment.  (*Id.*)

Although Stevens-Nunez does not state how she gained re-entry to the apartment after March 23, she alleges that on March 28, 2023, Sergeant Palmer and another officer "kicked [her] apartment door in . . . , detained [her] illegally," impounded her pets, and returned her to Lower Bucks Hospital.  (*Id.*)  She alleges Sergeant Palmer "made false accusations" in a criminal complaint related to this March 28 incident.[5]  (*Id.*)  She asserts the March 28 removal was unlawful and she "still ha[s] not been allowed to retrieve any of her belongings."  (*Id.*)  She further claims Defendant James Dillon "lied" in his responses to her requests for information under Pennsylvania's Right-to-Know Law, although she does not indicate what information she requested.  (*Id.*)  She asserts "most officers in 4+ districts in 2 counties use intimidation tactics to force mental eval[uation]s, [and] Lower Bucks Hospital does not release you when police tell them you are evicted."  (*Id.* at 6.)

---

[4]  Stevens-Nunez appended to her Complaint a Notice of Judgment from the Bucks County Magisterial District Court.  (ECF No. 2-1 at 12.)  That document and public records indicate Stevens-Nunez was a defendant in a landlord-tenant dispute over the apartment, in which judgment was granted in favor of the landlord for rental arrears without any indication Stevens-Nunez was subject to eviction.  *See 20/20 Real Estate v. Stevens-Nunez*, No. MJ-07102-LT-0000041-2023 (C.P. Bucks).  The docket reflects Stevens-Nunez filed an appeal but does not indicate the outcome of the appeal.  *See id.*

[5]  Stevens-Nunez also attached as exhibits to her Complaint an affidavit of probable cause, a criminal complaint, and a notice declaring the apartment "Unfit for Human Occupancy," all dated March 28, 2023.  (*See* ECF No. 2-1 at 13-17.)  The criminal complaint states "police advised [her the apartment] was condemned."  (ECF No. 2-1 at 16.)  The affidavit indicates Sergeant Palmer encountered Stevens-Nunez in the apartment on March 28 and arrested her for defiant trespassing and criminal mischief, based on her having allegedly broken a window to gain entry.  (*Id.* at 13.)  However, Sergeant Palmer also reported the District Attorney told him the charges "were not enough to bring before a judge at this time."  (*Id.*)  There is no public record of any further proceedings based on the criminal complaint or incident number.

3

Stevens-Nunez appears to claim violations of her due process rights under the Fourteenth Amendment (although she cites to various other constitutional provisions), as well as the Fair Housing Act ("FHA") and other statutes. (*See id.* at 1, 4-5.) She appends numerous exhibits to her Complaint (*see generally* ECF No. 2-1) but does not fully explain the relevance of all these exhibits to her claims.[6] Stevens-Nunez states she "do[es]n't know what to ask for" in terms of relief for her claims, although she provides various monetary figures related to the value of her personal property and her medical bills. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

The Court will grant Stevens-Nunez leave to proceed *in forma pauperis* because it appears she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Stevens-Nunez's Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Stevens-Nunez is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d

---

[6] The facts of the Complaint concern only March 23 & 28, 2023. Stevens-Nunez listed other dates on which she was allegedly injured as October 19, November 16, and December 6, 2023 (*see* Compl. at 4), but she does not include any facts about what happened on those dates.

4

239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims."  *Garrett*, 938 F.3d at 93 (citation omitted).  "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  *Id.* (cleaned up).  The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits."  *Id.* at 94.

## III.   DISCUSSION

Stevens-Nunez alleges the Defendants violated her federal constitutional rights, as well as her rights under the Fair Housing Act ("FHA").  The Court also understands her Complaint to allege violations of the Health Insurance Portability and Accountability Act ("HIPAA") and the Torture Act, 18 U.S.C. § 2340A.

### A.      Constitutional Claims

Stevens-Nunez's Complaint indicates an intent to bring claims against the Defendants

pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought

in federal court.  (*See* Compl. at 2.)  "To state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."  *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).

### 1.      Municipal Defendants

Stevens-Nunez names the "Bristol Borough Municipal Administration" and the Bristol

Police Civilian Complaint Review Board as Defendants.[7]  To state a claim for municipal

liability, a plaintiff must allege the defendant's policies or customs caused the alleged

constitutional violation.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978);

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must

identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the

pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "Policy is made

when a decisionmaker possess[ing] final authority to establish municipal policy with respect to

the action issues an official proclamation, policy, or edict."  *Estate of Roman v. City of Newark*,

914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480

---

[7] Claims against a municipal agency like the Police Civilian Complaint Review Board are treated as claims against the municipality itself because this kind of entity has no separate legal existence.  *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (noting governmental subunits cannot face liability under § 1983 because they are "not distinct from the municipality which" they are part of).  Also, the Court understands Stevens-Nunez's naming of the "Bristol Borough Municipal Administration" as a defendant to be an attempt to bring a claim against Bristol Borough.

(3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).[8]

It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of [her] injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.* (quoting *Bielevicz*, 915 F.2d at 850).  For a custom to be the proximate cause of an injury, a plaintiff must establish the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury."  *Id.* (internal quotations and alterations omitted).  In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker."  *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

---

[8]  Moreover, a local government's liability under § 1983 extends only to its "*own* illegal acts."  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  For this reason, Bristol Borough and its agencies cannot be liable based upon the acts of Borough Manager Dillon, Chief Moors, Inspector Miller, or any of the other individuals Stevens-Nunez refers to in the body of her Complaint.  *See Monell*, 436 U.S. at 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Crucially, a plaintiff may not predicate a *Monell* claim on "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct," based on "no facts to support the existence of any policy, custom, or practice beyond those involving [her] own [experiences]." *Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (noting "vague assertions" of a policy or custom are insufficient to impose liability). Yet that is exactly what Stevens-Nunez has done here. The only policy allegation she asserts in her Complaint is "most officers in 4+ districts in 2 counties use intimidation tactics to force mental eval[uation]s, [and] Lower Bucks Hospital does not release you when police tell them you are evicted." (*Id.* at 6.) This allegation is too vague to assert a plausible policy-or-custom claim against Bristol Borough since it is speculative and appears to rely on Stevens-Nunez's own experience.

Moreover, based on her reference to "302," it appears from the face of her Complaint that Stevens-Nunez's involuntary admission for emergency mental health treatment was governed by state statute, rather than a municipal policy. The system of involuntary mental health hospitalization established by statute in Pennsylvania permits "involuntary emergency mental health examination," which can last no longer than 120 hours, based on an *ex parte* decision by a physician, by a warrant of a county administrator, or by a personal observation of severe mental illness by a physician or peace officer, in which case a warrant is not required. *See* 50 Pa. Stat. and Cons. Stat. Ann. § 7302 (West 2019). Thereafter, progressively longer involuntary hospitalization for treatment is permitted, but requires more extensive processes. Specifically, "the court of common pleas shall appoint an attorney who shall represent the person unless it shall appear that the person can afford, and desires to have, private representation." *Id.*, § 7303 (providing for "an extended involuntary emergency treatment" not to exceed 20 days after

8

notice, the right to counsel, and an adversarial hearing before a "judge or mental health review officer"; hearings before mental health review officers must be reviewed by a Court of Common Pleas judge within 72 hours upon request).  Because involuntary mental health treatment in Pennsylvania is governed by state statute, to the extent Stevens-Nunez seeks to hold Bristol Borough liable for a § 1983 *Monell* policy claim based on her placement at Lower Bucks Hospital, the claim is not plausible and will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

Stevens-Nunez also appears to allege Bristol Borough violated her rights by "impeding [her] civil[ian] complaint on the Police officers under their Administration."  (Compl. at 3.) However, she does not plead any facts to support this claim.  She appears to rely solely on a letter signed by Defendant Dillon, which noted a complaint she filed would be reviewed once the Police Civilian Complaint Review Board has been properly reconstituted.  (ECF No. 2-1 at 1.) This claim will be dismissed because Stevens-Nunez fails to allege any facts about how this incident violated her constitutional rights, how it constituted a municipal policy, and because she may not rely solely on an exhibit to state a claim.  *See Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-77, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff cannot meet its pleading requirements under Rule 8(a) by attaching numerous exhibits to its Complaint.").

### 2.    Individual Defendants

Stevens-Nunez also named Borough Manager James Dillon, Police Chief Joseph Moors, and Inspector John Miller as Defendants.[9]  She appears to allege, pursuant to § 1983, that these Defendants deprived her of her due process rights under the Fourteenth Amendment.  None of her claims are plausible as pled.

Stevens-Nunez includes no facts related to Borough Manager Dillon beyond the conclusory allegation that he "lied on his R[ight-]T[o-]K[now] requests" and Dillon's letter, which advised her civilian complaint about the March 28 incident would be taken up when the Complaint Review Board is reconstituted.  (Compl. at 5; ECF No. 2-1 at 1.)  Stevens-Nunez has not provided sufficient information about what Dillon allegedly did to violate her rights.  Her claims against Dillon will thus be dismissed because they are not plausible.

As to Police Chief Joseph Moors and Borough Inspector John Miller, Stevens-Nunez alleges Moors disregarded unspecified court orders by directing Miller to conduct an inspection of her apartment and then refusing to let her back in.[10]  (Compl. at 5.)  The Court understands the allegation that Moors disregarded a court order when he ordered an inspection as an attempt to assert a due process claim.

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can

---

[9] Although many of the allegations in the Complaint refer to Police Sergeant Charles Palmer, the Court notes Stevens-Nunez did not name him as a Defendant.

[10] While not clear, it appears the inspection may have been ordered due to Stevens-Nunez's use of gasoline as an accelerant in her suicide attempt in the apartment and the need to use kitty litter as an absorbent, perhaps being the reason why the apartment was boarded up and padlocked, and posted with a notice that it was not safe for human habitation.  (*See* ECF No. 2-1 at 14-17.)

deprive an individual of a liberty or property interest.  To establish a procedural due process violation, a person must first demonstrate he has been deprived of a constitutionally protected property or liberty interest.  *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010).  Only upon finding a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest.  If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due.  Stated another way, to state a plausible Fourteenth Amendment due process claim, a plaintiff must allege: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)).

A plaintiff may also assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance.  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Stevens-Nunez does not explain how Chief Moors's ordering and Inspector Miller's conducting a new inspection of the apartment violated her due process rights.  Notably, Stevens-Nunez stated in her Complaint that, when she entered the apartment on March 23 following her release from Lower Bucks Hospital, it "was a mess with the absorbent from [her] suicide attempt using gasoline."  (Compl at 5.)  There was "kitty litter all over," and items were "thrown about

all over the apartment" and "broken in pieces."  (*Id.*)  The criminal complaint from the March 28

incident included as an exhibit indicated "police advised [her the apartment] was condemned."

(ECF No. 2-1 at 16.)  And the notice she attached as an exhibit declared the apartment was

"Unfit for Human Occupancy" and included a citation to "Section 108.1.3 of the 2003 IPMC

Code."[11]  (*Id.* at 15.)  That section provides the authority to declare a structure unfit "whenever

the code official finds that such structure is unsafe, unlawful or, because of the degree to which

the structure is in disrepair or lacks maintenance, is insanitary, . . . [or] contains filth and

contamination," among other grounds.  Int'l Prop. Maint. Code § 108.1.3 (Int'l Code Council

2003).  Stevens-Nunez has not alleged Chief Moors or Inspector Miller lacked the authority to

declare the apartment unfit for habitation after her suicide attempt using gasoline, which appears

to be unrelated to any prior judgment in her landlord-tenant proceeding.  In short, construing the

allegations of the Complaint liberally, it is unclear how Stevens-Nunez's due process rights were

violated in the ordering of an inspection of the apartment, since she does not assert the inspection

was arbitrary given the damage she concedes she caused.

Accordingly, Stevens-Nunez's claims against Chief Moors and Inspector Miller will be

dismissed without prejudice to amending the claims to address these deficiencies.

### B.    Fair Housing Act Claims

Stevens-Nunez also mentions the FHA in her Complaint, which prohibits discrimination

based on race, color, religion, sex, familial status, or national origin, in a variety of real estate-

related transactions.  *See* 42 U.S.C. § 3604.  The FHA's prohibition of discrimination "can be

violated by either intentional discrimination or if a practice has a disparate impact on a protected

---

[11]  Bristol Borough has adopted the International Property Maintenance Code of 2003 as its own.  *See* Bristol Borough Mun. Code § 5-201.

class." *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020). Additionally, "[i]n 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act ("FHAA") of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)). The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A).[12]

Discrimination under the FHAA also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services." 42 U.S.C. § 3604(f)(3)(B). The essential elements of a claim for refusal to accommodate under the FHAA are: (1) that the plaintiff, a co-resident, or other associate is disabled within the meaning of § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the disability; (3) that the plaintiff requested an accommodation that is both reasonable and necessary to afford the plaintiff an equal opportunity to use the dwelling in question; and (4) that the defendant refused to make the requested accommodation. *See Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir.2010); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

---

[12]  "Under the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)) (alteration in original).

The Court understands Stevens-Nunez to allege her eviction violated the FHA, the

FHAA, or both.  However, it is unclear whether she intends to claim any of the Defendants

discriminated against her based on race, color, religion, sex, familial status, national origin, or

disability, because she has not pled her membership in any of these protected classes.  Even if

she intended to lodge a disability-based claim related to her mental health treatment, she has not

indicated whether she requested a reasonable accommodation that was ultimately refused.

Accordingly, her FHA/FHAA claim is not plausible, and will be dismissed without prejudice to

amendment.

     **C.**     **Remaining Claims**

Stevens-Nunez's Complaint also alleges the Defendants "[r]eleased . . . Confidential

Documents for the sole purpose of intimidation," which she claims violated the "Torture Act"

and her rights under HIPAA.  (Compl. at 3.)  Neither claim is plausible.  The Court understands

her reference to the "Torture Act" to mean the criminal statute bearing that title, 18 U.S.C.

§ 2340A, which imposes criminal liability on individuals who commit acts of torture outside the

United States.  First, that statute has no apparent relevance to Stevens-Nunez's allegations.

Second, the United States Supreme Court has stated that, unless specifically provided for, federal

criminal statutes rarely create private rights of action.  *Nashville Milk Co. v. Carnation Co.*, 355

U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of

it provisions; in the absence of a clear expression of congressional intent to the contrary, these

sanctions should under familiar principles be considered exclusive, rather than supplemented by

civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of

Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of

action from a criminal prohibition alone.").  The fact a federal statute has been allegedly violated

14

and some person harmed does not automatically give rise to a private cause of action for the injured person. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979). Any claim Stevens-Nunez raises under the Torture Act will be dismissed with prejudice.

There is also no federal private right of action under HIPAA. *See Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.*, No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted,* 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018) ("'The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens.'" (quoting *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013)); *see also Cobb v. PrimeCare Med. Corp*., No. 18-1516, 2020 WL 13729620, at *6 (M.D. Pa. Jan. 29, 2020) (citations omitted), *report and recommendation adopted*, 2020 WL 13730063 (Feb. 24, 2020) (stating HIPAA "does not create a private right of action for alleged disclosures of confidential medical information. . . .  Therefore, neither [HIPAA] nor 42 U.S.C. § 1983 supports an action based on HIPPA violations.") (internal quotation omitted).  Accordingly, all claims asserting violations of HIPAA will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Stevens-Nunez's claims under the Torture Act and HIPAA will be dismissed with prejudice and her remaining claims will be dismissed without prejudice. The Bristol Borough Municipal Administration and the Bristol Police Civilian Complaint Review Board will be terminated as Defendants.  Stevens-Nunez will be given leave to file an

amended complaint in the event she can state a plausible basis for a claim against Bristol

Borough or any individual.  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL

5212964, at *4 (D.N.J. Oct. 16, 2019) (dismissing claims without prejudice is appropriate to

allow a plaintiff to "flesh out [her] allegations by . . . explaining in an amended complaint the

'who, what, where, when and why' of [her] claim.").  An appropriate Order, which provides

further instruction about amendment, will be entered separately.  *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, J.**